```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Gregory T. Howard,              :

        Plaintiff,              :

    v.                          :        Case No. 2:10-cv-757

United States District Court    :
for Southern District of Ohio,
et al.,                         :        JUDGE MARBLEY
                                         MAGISTRATE JUDGE KEMP
        Defendants.             :
```

                         OPINION AND ORDER


    On December 16, 2010, the Magistrate Judge issued a Report
and Recommendation which recommended that this case be dismissed
pursuant to 28 U.S.C. §1915(e)(2) for failure to state a claim.
During the next 30 days, plaintiff Gregory Howard filed no fewer
than fourteen documents (plus two letters) in response.  A number
of the documents are objections to the Report and Recommendation.
They were not all timely filed.  However, Mr. Howard also filed
an amended complaint in an effort to cure the deficiencies in his
original complaint which led the Magistrate Judge to recommend
dismissal.  Under these circumstances, the Court will conduct its
own review of the amended complaint to determine whether it can
survive the initial screening mandated by 28 U.S.C. §1915(e)(2).
For the following reasons, the Court finds that it is no more
viable than the initial complaint, and the Court will therefore
dismiss this action.  Such dismissal renders all of Mr. Howard's
other filings moot.

                                I.

    The Court begins by articulating the standard under which it
conducts the initial screening which is statutorily required in

cases where the plaintiff seeks leave to proceed *in forma pauperis*.

28 U.S.C. §1915(e)(2) states that when the Court receives a complaint and an application to proceed *in forma pauperis*, "[t]he court shall dismiss the case if ... (B) the action ... is frivolous or malicious [or] fails to state a claim on which relief can be granted...." A complaint is frivolous if all of the claims made in the complaint lack an arguable or rational basis in either law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U. S. 544, 570 (2007). Further, the well-pleaded averments of the complaint (although not the conclusory ones) must be accepted as true for purposes of determining if a complaint would survive a motion to dismiss for failure to state a claim upon which relief can be granted, assuming such a motion were to be filed under Fed.R.Civ.P. 12(b)(6). See Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Finally, the Court keeps in mind the admonition that *pro se* complaints are to be construed liberally in favor of the *pro se* party. Haines v. Kerner, 404 U.S. 519 (1972).

II.

As the Court will describe in greater detail below, this case was spawned by the Court's dismissal of one of Mr. Howard's prior cases, Case No. 2:07-cv-514. In this action, Mr. Howard seeks damages from the United States for what he asserts was the wrongful dismissal of the prior case. The Magistrate Judge began his analysis of Mr. Howard's complaint with this observation:

> It should be apparent to even the most casual student of the American legal system that a dissatisfied litigant cannot, after having a case dismissed, turn around and sue the United States or the

> federal judiciary for damages.  There would be no end
> to that type of proceeding, and it would make a mockery
> of the orderly administration of justice, which depends
> on the finality of judgments rendered in prior
> proceedings, and which protects both the United States
> and individual judges from being sued by unhappy
> litigants (and there are many of them - usually at
> least one in each case) so long as the court system
> properly, or even arguably, has functioned like a court
> when it dealt with the case.

Report and Recommendation, Doc. #13, at 1-2.  The Court agrees fully with this observation, and explains in this Opinion and Order why Mr. Howard's amended complaint represents a clever, but ineffectual, attempt to circumvent this fundamental principle.

Mr. Howard's prior case, Case No. 2:07-cv-514, captioned "Howard v. Supreme Court of Ohio et al.," was filed on June 4, 2007.  The named defendants in that case included the Supreme Court of Ohio, the Franklin County, Ohio Court of Common Pleas, the Franklin County, Ohio Court of Appeals, the Industrial Commission of Ohio, the Ohio Bureau of Workers' Compensation, and the private law firm of Eastman & Smith, Ltd.  The case was dismissed on January 14, 2008.  That dismissal was affirmed on appeal.

In his amended complaint, Mr. Howard "seeks compensation in the amount of $27,519,203.43 against the United States of America."  In support of that claim, he asserts that "[o]n January 14, 2008, Judge Marbley negligently and wrongfully granted motions to dismiss Plaintiff's viable claims in lawsuit No. 02:07-cv-514 and otherwise acted with malice, bad faith, in a wanton or reckless manner against plaintiff because he was acting without the assistance of legal counsel."  He claims that these actions allow him to recover damages under the Federal Tort Claims Act, 28 U.S.C. §§2671 *et seq*.  The complaint also attempts to set forth claims for conspiracy, invasion of

-3-

privacy, and the infliction of emotional distress, alleging that the Court has supplemental jurisdiction over these claims. Although the amended complaint makes no reference to claims which may be asserted directly under the United States Constitution in accordance with the decision in on <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), in some of Mr. Howard's other filings, he also advances this theory in support of his claim.  The questions which are fairly presented by Mr. Howard's amended complaint and his other filings are whether there is any legal basis - either those specifically identified by Mr. Howard, or any others which the facts he has pleaded bring to mind - for a clam against either the United States, or against judicial employees of the United States, for money damages based on the alleged wrongful dismissal of a prior lawsuit.

III.

The Court will begin with a brief explanation of the primary basis for Mr. Howard's claim, which is the Federal Tort Claims Act.  The jurisdictional grant for that statute, found in 28 U.S.C. §1346(b)(1), reads in part as follows:

> [T]he district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This same substantive standard for liability is repeated in 28 U.S.C. §2674, which states that "[t]he United States shall be

liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."  As the Supreme Court noted in Dalehite v. United States, 346 U.S. 15, 24 (1953), one of the first decisions to explain in depth the background and purpose of this statute, the Act resulted from nearly thirty years of Congressional debate about the "feeling that the Government should assume the obligation for the malfeasance of employees in carrying out its work."  However, the Court noted that "[t]he legislative history indicates that while Congress desired to waive the Government's immunity from actions for injuries to person and property occasioned by the tortious conduct of its agents acting within their scope of business, it was not contemplated that the Government should be subject to liability arising from acts of a governmental nature or function."  Id. at 27-28.

The primary limitation on this waiver of sovereign immunity for torts committed by governmental employees is the statutory restriction of liability to situations where the employee, if acting as a private person, could be held liable under the law of the place where the act occurred.  The Supreme Court has also made clear that the substantive law to which the FTCA refers is state law, stating that "we have consistently held that §1346(b)'s reference to the 'law of the place' means law of the State-the source of substantive liability under the FTCA."  F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994).  Thus, the beginning point of review of a claim asserted under the FTCA is usually (although not always, because of the various exceptions to liability found in 28 U.S.C. §2680) whether the actions attributed to the governmental employee involved in the case are actions for which a private person could be held liable under the laws of the state (here, Ohio) where the actions occurred.

An obvious conceptual issue presents itself at the outset. Some governmental employees - for example, those who drive vehicles, build buildings, or maintain premises like public buildings or parks - clearly have private counterparts, because private individuals and organizations engage in the same types of activities. However, there are no private judges (except perhaps for arbitrators) who would be the counterparts of federal judges. The absence of a private person who would act in a manner similar to the federal employee whose actions form the basis for the claim asserted under the FTCA is often fatal to such suits.

An example of this issue was addressed in <u>Figueroa v. United States</u>, ___ F.Supp. 2d ___, 2010 WL 3704187 (E.D.N.Y. 2010). There, the plaintiff sought damages for the issuance of a passport based on a forged passport application. The recipient of the passport was a minor child who, as a result of the alleged negligence of the issuing official in not detecting the forgery, was then taken out of the United States against the wishes of his father. The court noted that what it termed the "private party analog" requirement of the FTCA had to be satisfied before a viable claim could be stated, and that because there was no conduct that a private party could engage in which was similar or analogous to the issuance of a passport, that element of statutory liability had not been satisfied.

The <u>Figueroa</u> court was quick to recognize that the "private party analog" question is fairly nuanced, and that it is not always fatal to an FTCA claim to find that the function performed by the governmental employee is "uniquely governmental." Some activities, such as operating a lighthouse or inspecting a mine for compliance with federal safety regulations, are performed only by governmental officials, but private persons can engage in similar functions such as warning people of dangers or inspecting mines for other purposes. <u>Figueroa</u>, 2010 WL 3704187, *3, <u>citing</u>

United States v. Olson, 546 U.S. 43 (2005).  Indeed, as early as its decision in Indian Towing Co. v. United States, 350 U.S. 61, 64 (1955), the Supreme Court had rejected the notion that the FTCA "must be read as excluding liability in the performance of activities which private persons do not perform."  The Court directed the lower courts to look beyond the exact circumstances under which the government employee had acted and to determine if there were "like" circumstances in the private sector where such actions could legitimately form the basis for tort liability.

  One key to interpreting this provision in the Act, however, is the word "private."  Liability under the FTCA cannot be predicated on acts which would make state or local governmental entities liable, but not private citizens.  As the court stated in Lee v. United States, 570 F.Supp. 2d 142, 149 (D.D.C. 2008), "[t]he standard for tort liability under the FTCA, then, must be found in local laws applying to private citizens, not government employees."  See also United States v. Olson, supra, at 45-46.  In that regard, it has been held that government employees who perform "quasi-adjudicative" functions, such as those involved in revoking a naturalized citizen's citizenship, do not have private counterparts engaged in the same or similar functions and that such actions do not satisfy the "private party analog" requirement of the FTCA.  See Akutowicz v. United States, 859 F.2d 1122 (2d Cir. 1988).  For the same reason, tort liability cannot be predicated on the acts of quasi-judicial agencies such as the EEOC or the EPA because, again, those agencies' actions in investigating and attempting to resolve issues of federal law have no private counterpart.  Cortez v. E.E.O.C., 585 F.Supp. 2d 1273 (D.N.M. 2007); Employers Ins. of Wausau v. United States, 830 F.Supp. 453 (N.D. Ill. 1993), aff'd on other grounds 27 F.3d 245 (7th Cir. 1994).

The Court has not been able to locate any decisions which directly address the question of whether there is a private person whose actions would be sufficiently analogous to that of a United States District Judge, at least in the role of deciding legal issues presented in a civil action, to satisfy the "private party analog" requirement of the FTCA.  This absence of case law is hardly surprising.  Few people would likely consider the official act of a judge in making rulings on issues in a case properly before the judge to be tortious conduct of any kind, let alone conduct which has some analogy in the private sector and for which private parties may be held liable.  Further, one of the major exceptions to the FTCA, the "discretionary function" exception contained in 28 U.S.C. §2680(a), exempts the United States from liability if there is no mandatory regulation or policy which was allegedly violated by the employee's act, so that the official was vested with the discretion to choose among competing courses of action.  See, e.g., Reetz v. United States, 224 F.3d 794, 795-96 (6th Cir. 2000).  Judicial decisions are quintessentially discretionary, and involve exactly the type of policy decisions that the FTCA intended to shield from liability.  Finally, the various common-law immunities from suit, including absolute judicial immunity, are expressly made available to the United States in FTCA actions through 28 U.S.C. §2674, which provides in pertinent part that "[w]ith respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim ...."  As more fully discussed below, this provision, as well as the others cited above, make it abundantly clear that no tort action lies against the United States for the decisional activities of federal judges, so it is hardly remarkable that there is a dearth

of case law dealing with suits filed under such a theory. Assuming, however, the issue is one of first impression, the answer seems clear that there are no private persons within the State of Ohio functioning remotely like federal judges function when they issue rulings in civil lawsuits, and the "private person" analog of the FTCA cannot be satisfied here.

Mr. Howard, in his various filings, does address both the issue of judicial immunity and the issue (discussed in the Report and Recommendation) of whether an Ohio state court judge could be held liable in tort for the types of actions which Mr. Howard has attributed to Judge Marbley. Those are related issues, and while they are not ultimately pertinent to the question of whether the complaint must be dismissed for failure to state a claim (because that decision is founded on the absence of any private party analog), the Court will discuss each of them briefly.

As the analysis set forth above illustrates, the question of whether a private person could be held liable for the acts of the government employee which form the basis for an FTCA claim precludes the use of any state law basis for liability which relates to state governmental officials acting in that capacity, because they would not meet the "private actor" requirement of the FTCA. Even if that were not the case, however, Mr. Howard's argument that a state court judge could be held liable under Ohio Rev. Code §9.86 for his or her judicial decisions is simply wrong. That provision of Ohio law reads as follows:

> [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Although Mr. Howard contends that the terms "officer or employee" refer to a person, such as a judge, who is serving in an elected office or position with the state or is employed by the state, and that a state judge who acts with the requisite state of mind might be held liable under §9.86, an examination of the case law does not bear out this contention.

Notwithstanding the general Ohio principles codified in §9.86 which allow state officials to be sued for certain types of actions, Ohio common law recognizes that "[w]hen a judge acts in an official judicial capacity and has personal and subject-matter jurisdiction over a controversy, the judge is exempt from civil liability even if the judge goes beyond, or exceeds, the judge's authority and acts in excess of authority." Borkowski v. Abood, 117 Ohio St.3d 347, syllabus (2008). The only exception to this rule is when the judge has acted in the absence of all jurisdiction. Id. Not surprisingly, federal common law also provides this type of immunity to judges who decide cases or issue rulings in cases which are (or even arguably are) within the scope of their jurisdiction. See, e.g., Forrester v. White, 484 U.S. 219 (1988).

In order to overcome the application of judicial immunity to his claims. Mr. Howard asserts in his most recent complaint that this Court acted outside its jurisdiction in the prior case when it made allegedly erroneous rulings. See Doc. #14, ¶29 ("Judge Marbley's failure to follow the law in this action caused him to lose all jurisdiction over the underlying case"). This allegation is a legal conclusion and not a factual one, so it need not be accepted as true for purposes of determining if the complaint states a claim upon which relief can be granted. Further, it is simply wrong.

A court does not lose jurisdiction or act outside the scope of its jurisdiction by making incorrect rulings. If that

-10-

proposition of law were to be accepted, any erroneous, or even allegedly erroneous, ruling by a judge would defeat the judge's immunity from suit, and open up every judge to liability for merely being wrong.  That is not how the law works.  In order for judges to function as intended, they must be free to make the rulings they believe to be correct, and if that means that judges who make incorrect rulings - even rulings they know to be incorrect - are immune from suit, that is the necessary result.

As the Supreme Court has repeatedly held, if a complaint seeks to fasten liability upon acts taken by a judge, it must be true either (1) that the judge was not functioning in a judicial capacity, or (2) the judge has acted in the "clear absence of all jurisdiction."  Dennis v. Sparks, 449 U.S. 24, 27 (1980); Stump v. Sparkman, 435 U.S. 349, 357 (1978).  These are separate inquiries, and the Court will examine each separately.

As to the first inquiry, a judge has functioned in a judicial capacity when he or she has performed a "'function normally performed by a judge.'"  Mireles v. Waco, 502 U.S. 9, 12 (1991), quoting Stump, 435 U.S. at 362.  The focus of this part of the inquiry is not on the rightness or wrongness of the act in question, but simply whether what was done is what judges typically do.  In order to answer that question, the Court must "look to the particular act's relation to a general function normally performed by a judge ...."  Mireles, supra.  If a judge has so functioned, it is immaterial if the act was performed in error; "a judge 'will not be deprived of immunity because the action he took was in error ... or was in excess of his authority.'" Mireles, supra, quoting Stump, supra, at 356.  Further, the judge's state of mind in performing the act is also irrelevant; "judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice,"  Brookings v. Clunk, 389 F.3d 614, 617 (6th Cir.

2004), and "[j]udicial immunity is not overcome by allegations of bad faith or malice." Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994).

The other portion of the immunity inquiry focuses on the relationship of the act in question to the jurisdiction legitimately exercised by judges of the court on which the judge sits. As far as whether the Court performed a judicial act when it made rulings in Case No. 2:07-cv-514, the Court of Appeals has put it this way:

> The application of judicial immunity is simple and non-controversial when applied to "paradigmatic judicial acts," or acts of actual adjudication, i.e., acts involved in resolving disputes between parties who have invoked the jurisdiction of the court. Forrester, 484 U.S. at 227, 108 S.Ct. at 544. The touchstone for judicial immunity is the function of dispute resolution, or of authoritatively adjudicating private rights. Barnes [v. Winchell], 105 F.3d [1111 (6th Cir. 1997)] at 1116 (citing Antoine [v. Byers & Anderson, Inc.], 508 U.S. [429 (1993)] at 435-436, 113 S.Ct. at 2171) (quotation omitted).

Mr. Howard's complaint (and his administrative claim) make it clear that the conduct for which he seeks to hold the United States liable all relates to rulings issued by Judge Marbley in Case No. 2:07-cv-514. Thus, answering the question of whether those rulings constituted "judicial functions" is "simple and non-controversial." They did, and the rightness or wrongness of the rulings made, as well as the Judge's state of mind while making them, are irrelevant to the immunity inquiry.

The second part of the test requires the Court to focus on whether the judicial acts were performed in a case which was clearly outside the scope of the jurisdiction granted to the court on which the judge sat at the time the rulings were made. In this area, the courts have drawn a distinction between acts which exceed the scope of the court's jurisdiction, and acts

-12-

which are taken in the absence of any jurisdiction.  As an example, "a criminal court judge would be immune from liability for convicting a defendant of a nonexistent crime, an act taken in excess of his jurisdiction, whereas a probate court judge would not be immune from liability if he tried a criminal case because he clearly lacked all subject matter jurisdiction." Barnes v. Winchell, 105 F.3d 1111, 1122 (6th Cir. 1997).  "Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes."  Id., citing Adams v. McIlhany, 764 F.2d 294, 298 (5th Cir. 1985).

It is plain that Case No. 2:07-cv-514 was within the jurisdiction of a United States District Court.  Mr. Howard himself invoked federal court jurisdiction in his complaint, and his attempt to state a claim against the various state governmental defendants for the deprivation of federal constitutional rights fell within the Court's jurisdiction under 28 U.S.C. §§1331 and 1343.  At best, he has alleged actions by the Court which, presumably because they were (in Mr. Howard's view) taken in error, somehow "exceeded" the Court's jurisdiction (if one assumes that the Court has jurisdiction only to issue correct rulings - itself a highly doubtful proposition).  But there is no colorable argument to be made that they were taken in the clear absence of all jurisdiction.  Thus, under either state or federal law, there is simply no tort liability that can be premised on a judge's rulings in a case over which the judge even arguably had jurisdiction.

In paragraphs 33 through 37 of his amended complaint, Mr. Howard appears to allege causes of action which are not necessarily predicated upon judicial rulings made in the prior action.  Paragraph 33 asserts that the defendants identified in paragraph 32 - the same defendants whom Mr. Howard sued in Case No. 2:07-cv-514 - conspired against him, invaded his privacy, and

-13-

caused him to suffer extreme emotional distress.  In the paragraphs which follow, Mr. Howard avers that these claims are not excluded from the operation of the Federal Tort Claims Act by any of the exclusions listed in 28 U.S.C. §2680 and the Court therefore has jurisdiction to consider them.  He also claims that they would fall outside the scope of any judicial immunity that might apply to the claims he has made based on the judicial rulings made in Case No. 2:07-cv-514, that these defendants could be held liable for civil conspiracy under 28 U.S.C. §1343(a)(1), and that the Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. §1367.

There are any number of reasons why these allegations will not save this case from dismissal.  First, none of the persons or organizations named in paragraph 32 are listed as defendants in this case.  The amended complaint clearly states that "Defendant is the United States of America."  Amended complaint, ¶6. Further, since none of these persons or organizations are employees or agencies of the United States, the FTCA does not apply to them at all.  Additionally, to the extent that the complaint attempts to resurrect any claims asserted against these persons or organizations which were also asserted in Case No. 2:07-cv-514, the final judgment in that case precludes the reassertion of those claims here.  See Federated Dept. Stores v. Moitie, 452 U.S. 394, 398 (1981) (" A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action").

Finally, if Mr. Howard is attempting to claim that some action taken by these persons or organizations within the context of Case NO. 2:07-cv-514 constituted an independent violation of his constitutional rights (and he may have intended to raise such a claim through his citation to 28 U.S.C. §1343, which is the

jurisdictional counterpart to 42 U.S.C. §1983), such claims would be barred by a different immunity which protects litigants from civil liability for their activities related to litigation. Thus, no liability exists under §1983 for petitioning the government for relief by way of the use of the judicial process "even where the petitioning activity has the intent or effect of depriving another of property interests." Eaton v. Newport Bd. of Educ., 975 F.2d 292, 298 (6th Cir. 1992). There is a "sham litigation" exception to this doctrine, applicable when " parties use the petitioning process, rather than the outcome of that process, as an anticompetitive weapon," see Knology, Inc. v. Insight Communications Co., 393 F.3d 656, 658 (6th Cir. 2004), but that clearly does not apply here. Mr. Howard is the one who invoked the judicial process in the prior litigation; the defendants merely responded. Further, liability under either §1983 or state law cannot be predicated on any statements which litigants may have made in pleadings filed in a pending case. See, e.g., Briscoe v. LaHue, 460 U.S. 325 (1983)(recognizing common law witness immunity in the context of claims brought pursuant to §1983); see also United States v. Rockland Trust Co., 860 F.Supp. 895 (D. Mass 1994) (recognizing same privilege and extending it to any statement made in connection with litigation). Consequently, even had the complaint also named these additional defendants (which it does not) and had it stated a claim against them with enough specificity for the Court to determine exactly why Mr. Howard believes he still has some viable claim against them (which it also does not), his reference to such claims is irrelevant to the issue of whether the case should be dismissed.

   Lastly, and only because some of Mr. Howard's filings other than his amended complaint raise this issue, the Court will address the question of whether he might be able to maintain a

constitutional tort action under the facts of this case in accordance with the Supreme Court's decision in <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  It is clear that he cannot, for reasons similar to those set forth above, and for other reasons as well.

<u>Bivens</u> recognized that there was some inequality in a legal structure which afforded persons whose constitutional rights had been infringed by state governmental officials to sue for redress (which Congress had made available by statute, <u>see</u> 42 U.S.C. §1983), but not to permit persons whose constitutional rights had been infringed by *federal* governmental officials to do the same.  Thus, for certain kinds of constitutional violations, the Court implied a remedy directly under the United States Constitution, and concluded that federal courts had the power to entertain such direct actions by virtue of the jurisdictional grant found in 28 U.S.C. §1331.

At first, some readers of <u>Bivens</u> assumed that a direct constitutional action was an exact counterpart of §1983 and that all of the constitutional rights which could give rise to a §1983 claim could also be enforced in a <u>Bivens</u> action.  The Supreme Court has made it clear that the scope of <u>Bivens</u> is more limited, however, and that if there are special factors which counsel against extending <u>Bivens</u> as far as §1983 has been extended, the Court will proceed cautiously in bringing new constitutional claims within the scope of that remedy.  <u>See, e.g. Schweiker v. Chillicky</u>, 487 U.S. 412 (1988); <u>Bush v. Lucas</u>, 462 U.S. 367 (1983).  What has never been questioned, however, is that the exact same immunities to suit which have been judicially recognized in the context of §1983 litigation have been applied equally to suits brought directly under the Constitution.  Thus, as the Supreme Court has stated, "we deem it untenable to draw a distinction for purposes of immunity law between suits brought

against state officials under §1983 and suits brought directly under the Constitution against federal officials." Butz v. Economou, 438 U.S. 478, 504 (1978); see also Vector Research, Inc. v. Howard & Howard Attorneys, P.C., 76 F.3d 692, 699 (6th Cir. 1996)("Bivens immunity generally is co-extensive with section 1983 immunity ..."). Courts have routinely applied absolute judicial immunity to Bivens claims brought against federal judges. See, e.g., Kipen v. Lawson, 57 Fed. Appx. 691 (6th Cir. 2003), citing Bolin v. Story, 225 F.3d 1234, 1240-42 (11th Cir. 2000); see also Newsome v. Merz, 17 Fed. Appx. 343 (6th Cir. 2001); Ealy v. Rice, 2009 WL 1107821 (S.D. Ohio April 23, 2009) (Dlott, C.J.).

All of this means that, had Mr. Howard actually named Judge Marbley as a defendant in his individual capacity (because only federal officials so named are proper defendants in a Bivens action, see F.D.I.C. v. Mayer, 510 U.S. 471 (1994); Berger v. Pierce, 933 F.2d 393 (6th Cir. 1991)), judicial immunity would bar such a suit. Of course, Judge Marbley was not so named, and the United States cannot be sued directly under Bivens, so the amended complaint fares no better as a purported Bivens action than it does as an FTCA suit. Thus, the Court finds no basis on which to conclude that the facts pleaded in the amended complaint give rise to any viable legal claim against either the United States or any other party mentioned in the body of that complaint.

IV.

For all of the reasons set out above, the Court **ORDERS** the following:

1. Plaintiff's motion to amend his complaint (#14) is **GRANTED**;

    2. All of plaintiff's objections to the Report and Recommendation (#13) are either mooted by the filing of the amended complaint or are meritless and are therefore **OVERRULED**;

    3.  This case is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §1915(e)(2) for failure to state a claim upon which relief can be granted; and

    4.  All other pending motions are **DENIED**.

    The Court further **CERTIFIES** that any appeal of this order would not be taken in good faith.

    IT IS SO ORDERED.

                                       s/Algenon L. Marbley  
                                      ALGENON L. MARBLEY  
                                      UNITED STATES DISTRICT COURT JUDGE

DATED:   March 17, 2011